UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE R. TURNER,<br><br>         Plaintiff,<br><br>         v.<br><br>NANCY BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>        Defendant. | Case No. CV 15-8675-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On November 5, 2015, plaintiff Alice Turner filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"),[1] seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, the current Acting Commissioner, has been substituted as the defendant.

1

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") properly considered the opinion of a State Agency physician and included her opined limitations in his RFC determination and corresponding hypothetical. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-6; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-8.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the State Agency physician and reached a proper RFC determination. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fourteen years old on the alleged disability onset date, is a high school graduate who attended college for one year. AR at 51, 187. Plaintiff has no past relevant work. *Id*. at 30, 41.

On March 28, 2011, plaintiff filed an application for SSI, alleging an onset date of April 19, 2005 due to a mental condition and spinal, pelvic, and hip problems. *Id*. at 51. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 74-77, 82-90.

On March 31, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 38-49. The ALJ also heard testimony from Kristan Cicero, a vocational expert. *Id*. at 45-49. On April 16, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 21-31.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

since March 28, 2011, the application date. *Id.* at 23.

At step two, the ALJ found plaintiff suffered from the following severe impairments: fracture of the left wrist; pelvic inflammatory disease; dysthymic disorder; a mood disorder; pain disorder associated with a general medical condition; and post-traumatic stress disorder ("PTSD"). *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined she had the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations that plaintiff could: understand and remember tasks; sustain concentration and persistence; socially interact with the general public, co-workers, and supervisors; and adapt to workplace changes frequently enough to perform unskilled low stress jobs that require simple instructions. *Id.* at 27.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at 30.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cleaner II, laundry laborer, and dryer attendant. *Id.* Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA").

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

*Id.* at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff argues the ALJ failed to properly consider and incorporate the opinion of psychologist Dr. Heather Barrons, a State Agency physician,[3] in his RFC determination and, as such, posed an improper hypothetical to the vocational expert. P. Mem. at 3-6. Specifically, plaintiff contends the ALJ omitted Dr. Barrons's opinion that she had moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. at 4; *see* AR at 69-70.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four).

In determining whether a claimant has a medically determinable impairment and his or her RFC, among the evidence the ALJ considers is medical evidence. 20

---

[3] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. § 416.913(a)(2) (effective from September 3, 2013 through March 26, 2017). Accordingly, for ease of reference, the court will refer to all psychologists as physicians.

5

C.F.R. § 416.927(b).[4] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

---

[4] For claims filed before March 27, 2017, the evidence is considered under 20 C.F.R. § 416.927.

**Medical History**[5]

Dr. Suzanne Sanchez, a psychologist, purportedly treated plaintiff every six months from July 26, 2011 through at least July 8, 2012.[6] AR at 676-77. Dr. Sanchez opined plaintiff had a fair ability to understand, remember, and carry out complex and simple instructions, and maintain concentration, attention, and persistence. *Id*. at 677. Dr. Sanchez did not describe the extent of plaintiff's limitations. *See id.*

Dr. Fortuna Israel, a consultative psychiatrist, examined plaintiff on November 7, 2011. AR at 656-60. Dr. Israel observed plaintiff was alert, oriented, had poor attention and concentration, was coherent and organized, had an intact memory, and had poor insight and judgment. *See id*. at 658-59. Based on the examination, Dr. Israel diagnosed plaintiff with mood disorder, not otherwise specified; impulse control disorder, not otherwise specified; PTSD; and borderline personality disorder. *Id*. at 659. Dr. Israel opined plaintiff would be unable to perform detailed and complex tasks, would be unable to maintain regular attendance, would be resistant to supervision in a normal workday, might be impulsive and interrupt her work, would have trouble interacting with coworkers and authority, would have trouble dealing with the public, and would have trouble

---

[5] Because only plaintiff's non-exertional limitations are at issue, this court will limit its discussion to plaintiff's mental impairments and limitations.

[6] The opinion of Dr. Suzanne Sanchez does not appear to be authentic. The Short-Form Evaluation for Mental Disorders purportedly completed by Dr. Sanchez is written in plaintiff's handwriting, and both Dr. Sanchez's first name and psychologist are misspelled. *See* AR at 676-77 and Health Grades, https://www.healthgrades.com/provider/suzanne-sanchez-3mgmm; *compare* AR at 676-77 to 205-12. Indeed, "psychologist" is misspelled in the same manner as in the "Pain and Other Symptoms" form completed by plaintiff. *See id*. at 204.

Further, the non-medical opinions submitted by James Jerrell, Jr. and Sean Gilbert in support of plaintiff's application also appear to have been completed by plaintiff herself. *See id*. at 213-22, 233-39.

7

dealing with the usual stresses encountered in competitive work. *Id*. at 660. Dr. Israel also noted, however, that plaintiff did not appear to be a reliable historian, was not willing to make the effort, and appeared to be exaggerating or manipulating at times. *See id*. at 656, 658.

Dr. Elmo Lee, a consultative psychiatrist, examined plaintiff on November 4, 2012. *Id*. at 680-83. Dr. Lee reviewed plaintiff's medical records and performed a mental status examination. *See id*. at 680. Plaintiff exhibited logical, coherent, and goal directed mental activity, as well as had an euthymic affect. *See id*. at 681. Dr. Lee also observed plaintiff was alert, oriented, had an intact memory, and was able to perform the serial 7s slowly. *See id*. at 681-82. Dr. Lee diagnosed plaintiff with dysthymic disorder, pain disorder associated with a general medical condition, PTSD by history, and bipolar disorder by history. *Id*. at 682. Dr. Lee determined plaintiff's psychiatric symptoms were relatively mild and treatable. Based on the history, records, and examination, Dr. Lee opined plaintiff could manage her own funds, perform simple and repetitive tasks, perform detailed and complex tasks, accept instructions from supervisors, interact with co-workers and the public, perform work activities on a consistent basis without special or additional instruction, maintain regular attendance in the workplace and complete a normal workday/workweek without interruptions from a psychiatric condition, and deal with the usual stress encountered in the workplace. *Id*. at 682-83.

Dr. Steven E. Rudolph is a treating psychiatrist who only examined plaintiff on one occasion.[7] *See id*. at 864-65. Dr. Rudolph observed that plaintiff presented with symptoms of anxiety, ADHD, and PTSD. *See id*. at 865. Dr. Rudolph noted that plaintiff made inconsistent statements about whether she was pregnant and

---

[7] An intern at Antelope Valley Mental Health Clinic conducted the initial psychiatric assessment of plaintiff on June 3, 2013, which was reviewed by a psychologist. *See* AR at 858-62. Plaintiff failed to show up for appointments on July 19, 2013 and September 30, 2013. *See id*. at 863, 866.

8

exhibited drug seeking behavior. *See id.* Based on the examination and plaintiff's self-reporting, Dr. Rudolph diagnosed plaintiff with PTSD and anxiety. *Id*. at 872, 876. In a Mental RFC Questionnaire, dated November 4, 2013, Dr. Rudolph opined plaintiff's mental abilities precluded her from, among other things: understanding and remembering short and simple instructions for 15% or more of an eight-hour work day; carrying out short and simple instructions for ten percent of a work day; maintaining attention and concentration for an extended period of time for five percent of the work day; making simple work-related decisions for ten percent of a work day; and interacting appropriately with the general public for five percent of a work day. *See id*. at 873-74. Dr. Rudolph also opined that with mental health treatment, plaintiff could rehabilitate and work within six months. *Id*. at 875.

Dr. Heather Barrons, a State Agency physician, reviewed plaintiff's medical records. *See id.* at 65-71. Dr. Barrons determined plaintiff suffered from affective, anxiety-related, and personality disorders. *Id*. at 67. From a functional perspective, Dr. Barrons opined plaintiff would not be significantly limited in her ability to, among other things: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule and maintain regular attendance; and maintain socially appropriate behavior. *Id*. at 69-70. Dr. Barrons also opined plaintiff would be moderately limited in her ability to, among other things: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal work day without interruptions from psychologically based symptoms. *Id.* To clarify the degree of these limitations, Dr. Barrons explained that plaintiff was capable of understanding and remembering simple instructions and procedures; maintaining concentration, pace, and persistence for simple routines; interacting with co-workers and supervisors on

a superficial and non-collaborative basis; brief public contact; and adapting to a work environment. *Id*. at 70-71.

**The ALJ's Findings**

Relying on the treatment records, objective medical evidence, and medical and non-medical opinions, the ALJ determined plaintiff could: understand and remember tasks; sustain concentration and persistence; socially interact with the general public, coworkers, and supervisors; and adapt to workplace changes frequently enough to perform unskilled low stress jobs that require simple instructions. *Id*. at 27. In reaching his RFC determination, the ALJ discussed all of the medical history, gave substantial weight to the opinions of Dr. Lee, Dr. Sanchez, and Dr. Barrons, and gave little weight to the opinions of Dr. Israel and Dr. Rudolph.[8] *Id*. at 24-29.

Plaintiff contends the ALJ erred because, although he stated that he gave substantial weight to Dr. Barrons's opinion, he failed to include the moderate limitations opined by Dr. Barrons in the hypothetical posed to the vocational expert. P. Mem. at 3-6. In addition, at the hearing, the ALJ precluded plaintiff's counsel from posing a hypothetical of an individual with "moderate limitations." *See* AR at 47. Dr. Barrons opined moderate limitations in Section 1 of the Mental Residual Functional Capacity Assessment ("MRFCA") and then explained the degree and extent of those limitations. *See* AR at 69-70. Dr. Barrons opined that plaintiff was capable of understanding and remembering simple instructions and procedures; maintaining concentration, pace, and persistence for simple routines;

---

[8] As discussed above, Dr. Sanchez's opinion does not appear to be authentic. This issue was raised by Dr. Barrons, but not the ALJ or the parties. *See* AR at 65. Assuming Dr. Sanchez's opinion is not authentic, the ALJ's reliance on Dr. Sanchez's opinion is nevertheless harmless. The RFC determination was supported by both Dr. Lee's and Dr. Barrons's opinions. Because questions concerning the authenticity of Dr. Sanchez's opinion exist, the court will not discuss Dr. Sanchez's opinion here.

interacting with co-workers and supervisors on a superficial and non-collaborative basis; brief public contact; and adapting to a work environment. *Id*. at 70.

Dr. Barrons's findings of moderate limitations set forth in Section 1 of the MRFCA are not an RFC assessment and the ALJ was not required to consider them. *See* Social Security Program Operations Manual System ("POMS") DI 24510.060(B); *Merritt v. Colvin*, 572 Fed. Appx. 468, 470 (9th Cir. 2014) (finding the "magistrate judge correctly concluded the ALJ was not required to consider, let alone adopt, the mental functional limitations checked in Section 1 of the MRFCA form") (internal quotations omitted); *Nathan v. Colvin*, 551 Fed. Appx. 404, 408 (9th Cir. 2014) ("Section 1 of the MRFCA is not an RFC Assessment"). Instead, the mild, moderate, or severe limitations in the broad categories of activities of daily living, social functioning, and concentration, persistence, or pace are actually used to rate the severity of impairments at steps two and three, which an ALJ then translates into concrete work restrictions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (the ALJ properly translated the opined moderate limitations to concrete restrictions); *Soto v. Colvin*, 2013 WL 3071263, *2 (C.D. Cal. June 17, 2013) (ALJ not required to include the moderate limitations in activities of daily living and social functioning in the RFC assessment because they do not equate to concrete work-related limitations); *Young v. Colvin*, 2014 WL 4959264, *10 (E.D. Cal. Oct. 1, 2014) ("[M]oderate impairments assessed in broad functional areas used at steps two and three of the sequential process do not equate to concrete work-related limitations for purposes of determining a claimant's RFC.") (internal quotations and citation omitted); *see also* Social Security Ruling 96-8p.

Here, the ALJ translated plaintiff's impairments, including the moderate limitations opined by Dr. Barrons, into concrete work restrictions for the RFC determination *See Rogers v. Comm'r*, 490 Fed. Appx. 15, 17-18 (9th Cir. 2012)

(RFC assessment was adequate as it translated the steps two and three findings into concrete work-related abilities). In reaching such an assessment, the ALJ relied on Dr. Barrons's opinion that plaintiff, while suffering from various moderate impairments, was nevertheless capable of performing work that only required simple instructions and procedures and maintaining her concentration, pace, and persistence for simple routines, as well as Dr. Lee's opinion that plaintiff could perform simple and repetitive tasks. In other words, the ALJ's RFC determination was consistent with the functional limitations opined by Dr. Barron, as well as Dr. Lee. Thus, the RFC determination was supported by substantial evidence.

Plaintiff also argues the ALJ should have given Dr. Barrons's opinion great weight, and implies that it should have been accorded greater weight than that of Dr. Lee because, unlike Dr. Lee, Dr. Barrons reviewed all of plaintiff's medical records. P. Mem. at 5. Here, the ALJ indeed gave Dr. Barrons's opinion substantial weight, as well as that of Dr. Lee. Contrary to plaintiff's argument, there was no basis for giving Dr. Barrons's opinion greater weight than Dr. Lee's opinion. In general, the opinion of an examining physician would carry more weight than that of a reviewing physician. *See Holohan*, 246 F.3d at 1202. Moreover, contrary to plaintiff's contention, Dr. Lee also appeared to have reviewed plaintiff's medical records. *See* AR at 680.

Accordingly, the ALJ's RFC determination was supported by substantial evidence and his corresponding hypothetical to the vocational expert was proper.

//

//

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: May 31, 2017

SHERI PYM
United States Magistrate Judge